UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>HAILI KOWALSKI, et al.,<br><br>Defendants. | Case No. 21-cv-06469-RS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS CROSS-CLAIMS AND DENYING MOTION TO STRIKE** |

## I. INTRODUCTION

Hartford Life and Accident Insurance Company ("Hartford") filed the instant Complaint in Interpleader to resolve competing claims to a life insurance policy by Defendants Haili Kowalski and Marilyne Valois. Each Defendant has filed cross-claims against the other. *See* Dkt. 16, at 7–12; Dkt. 25 ("Kowalski Cross-Claim"), at 9–15. Valois now moves under Rule 12(b)(6) to dismiss Kowalski's cross-claims and to strike a portion thereof. For the reasons discussed below, the motion to dismiss is granted in part and denied in part, and the motion to strike is denied.

## II. BACKGROUND[1]

Marc Kowalski died on December 30, 2020. Prior to his death, Mr. Kowalski participated

---

[1] The factual background is based on the averments in Kowalski's cross-claim, which must be taken as true for purposes of a Rule 12(b)(6) motion, and documents of which the Court may take judicial notice. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); *see also Mehta v. Medovich*, No. 18-cv-04373-RS, 2019 WL 7841861, at *1 (N.D. Cal. Apr. 29, 2019).

in a group life insurance policy sponsored by his employer, Micron Technology, Inc., and administered by Hartford (the "Hartford Plan"). At the time of his death, the proceeds of the policy amounted to $493,000. The policy listed Marilyne Valois as the named beneficiary, and on this basis she submitted a claim to Hartford for the proceeds. Haili Kowalski, who was formerly married to Marc Kowalski, submitted a separate claim on behalf of their minor son, E.K. She asserted a right to the proceeds under the terms of the 2010 Legal Separation Agreement ("LSA") that formalized the Kowalskis' divorce; one provision of the LSA required Marc to "carry and maintain a life insurance policy of $800,000 and to name [E.K.] as the sole beneficiary and to not borrow, assign, or otherwise encumber said policy." Kowalski Cross-Claim ¶ 73.

In the face of these competing claims, Hartford filed the instant Complaint in Interpleader in August 2021. Both Defendants filed answers with cross-claims. Kowalski seeks a declaratory judgment that she, as legal guardian of E.K., is entitled to the proceeds because the LSA is a Qualified Domestic Relations Order ("QDRO") under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA"). She therefore contends that her claim takes precedence over that of Valois. In the alternative, she argues Valois is not entitled to any of the benefits because she "exerted undue influence and control over [Marc] Kowalski such that she was improperly listed as the beneficiary." Kowalski Cross-Claim ¶ 80. Finally, Kowalski brings a second cross-claim for relief for conversion. Valois' cross-claim similarly seeks a declaratory judgment that she is entitled to the life insurance proceeds as the policy's designated beneficiary, and that Kowalski's LSA is not QDRO. Valois has moved to dismiss Kowalski's cross-claims, and she has further moved to strike portions of the cross-complaint, on the grounds that they are legally irrelevant and simply constitute attacks on her character.

### III. LEGAL STANDARD

#### A. Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) governs motions to dismiss for failure to state a claim. A complaint must contain a short and plain statement of the claim showing the pleader is entitled to relief. Fed. R. Civ. P. 8(a). While "detailed factual allegations" are not required, a

complaint must have sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Dismissal under Rule 12(b)(6) may be based on either the "lack of a cognizable legal theory" or "the absence of sufficient facts alleged" under a cognizable legal theory. *UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013) (citation and internal quotation marks omitted). When evaluating such a motion, courts "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).

### B. Motion to Strike

A court may strike portions of a pleading if they present an "insufficient defense, or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). A motion to strike should be granted if it will eliminate serious risks of prejudice to the moving party, delay, or confusion of issues. *See Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1528 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994). "Motions to strike are regarded with disfavor . . . because of the limited importance of pleadings in federal practice and because they are often used solely to delay proceedings." *Capella Photonics, Inc. v. Cisco Sys., Inc.*, 77 F. Supp. 3d 850, 858 (N.D. Cal. 2014) (quotation omitted). Courts "shall view the pleadings in the light most favorable to the pleader." *Zep Solar Inc. v. Westinghouse Solar Inc.*, No. C 11-06493 JSW, 2012 WL 1293873, at *1 (N.D. Cal. Apr. 16, 2012).

### IV. DISCUSSION

Valois moves to dismiss Kowalski's cross-claims on three main grounds. First, she argues the LSA is not a QDRO, and therefore that Kowalski has no claim to the life insurance proceeds. Second, Valois argues that Kowalski's alternate theory of undue influence is insufficiently pled. Third, Valois argues Kowalski's cross-claim for conversion is preempted by ERISA, and that Kowalski possibly lacks standing to pursue it. In addition, Valois moves to strike portions of the

ORDER ON MOTION TO DISMISS CROSS-CLAIMS AND MOTION TO STRIKE
CASE NO. 21-cv-06469-RS
3

cross-claim. These issues are addressed in turn.

**A. Whether the LSA is a QDRO**

Under ERISA, a QDRO has the effect of "elevat[ing] a plan participant's legal obligations, commonly to a former spouse or children of a previous marriage, over the participant's express wishes to provide for other individuals as designated beneficiaries." *Trs. of Dirs. Guild of Am.-Prod. Pension Benefits Plans v. Tise*, 234 F.3d 415, 425 (9th Cir. 2000). Thus, a threshold question in this case is whether Kowalski's LSA is a QDRO; if it is, then it must take precedence over Valois as the designated beneficiary.

The criteria for a QDRO are listed in 29 U.S.C. § 1056. This section requires that a QDRO clearly specify:

> (i) the name and the last known mailing address (if any) of the participant and the name and mailing address of each alternate payee covered by the order,
>
> (ii) the amount or percentage of the participant's benefits to be paid by the plan to each such alternate payee, or the manner in which such amount or percentage is to be determined,
>
> (iii) the number of payments or period to which such order applies, and
>
> (iv) each plan to which such order applies.

29 U.S.C. § 1056(d)(3)(C). Furthermore, a QDRO must not "require the plan to provide increased benefits (determined on the basis of actuarial value)." *Id.* § 1056(d)(3)(D)(ii). The parties appear to agree that the LSA satisfies the first three requirements, but they disagree as to whether it satisfies the fourth (that is, specifying "each plan to which such order applies"). Valois argues it does not, because the LSA does not include the name of the Hartford Plan (or any particular life insurance plan), but rather generally requires that Marc Kowalski have carried life insurance. The parties also disagree as to whether the LSA requires the Hartford Plan to provide "increased benefits." Valois, again, argues that it does because it requires that Marc Kowalski have carried $800,000 in life insurance, rather than the $493,000 that will be distributed under the Hartford Plan; thus, the LSA requires a larger payout and cannot be a QDRO. Neither party's brief contends

that the resolution of this issue turns on as-yet-undiscovered facts or that the LSA language is ambiguous.[2] Rather, whether the LSA is a QDRO is a question of law. *See Stewart v. Thorpe Holding Co. Profit Sharing Plan*, 207 F.3d 1143, 1150 n.5 (9th Cir. 2000).

Taking the second dispute first, Valois' argument with respect to increased benefits is without merit. A review of the statutory provision and the case law interpreting it reveal it is designed primarily to shield plans from being saddled with larger, ongoing payments, typically in the context of pension plans. This explains why the statute qualifies "increased benefits" as those being determined "on the basis of *actuarial* value." *See, e.g.*, *Smith v. Est. of Smith*, 248 F. Supp. 2d 348, 358 (D.N.J. 2003) ("One of the main reasons behind this restrictive approach [to increased benefits] is that 'successful operation of a defined benefit plan requires that the plan's liabilities be ascertainable as of particular dates.'" (quoting *Samaroo v. Samaroo*, 193 F.3d 185, 190 (3d Cir. 1999))). These concerns are not present here. Kowalski is not demanding from Hartford the $800,000 specified in the LSA; she asks only for the $493,000 contained in the policy. *See Patton v. Denver Post Corp.*, 326 F.3d 1148, 1152 (10th Cir. 2003) ("As to the meaning of an increase, case law . . . confirms that the increase must be real rather than conceptual."). The $493,000 is not subject to any further increase on the basis of actuarial value, and Hartford evidently does not view itself at risk of paying any increased amount, having already interpleaded the disputed funds. *Cf. Metro. Life Ins. Co. v. Wheaton*, 42 F.3d 1080, 1084–85 (7th Cir. 1994). The LSA therefore does not provide "increased benefits" within the meaning of § 1056(d).

The more difficult question is whether the failure to name the Hartford Plan in the LSA is fatal to Kowalski's cross-claim. Kowalski concedes that the Hartford Plan is not included by name, but she contends that including the name is unnecessary as "there is no ambiguity as to which life insurance policy" the LSA applies. Dkt. 30, at 10. Valois argues that this is irrelevant and that the plain statutory language compels only one conclusion: because the Hartford Plan is

---

[2] At oral argument, however, Kowalski's counsel suggested that additional documentation may be able to elucidate this provision of the LSA.

1  not named, the LSA is not and cannot become a QDRO.

2        Clear as the statute may appear on the surface, the Ninth Circuit, like multiple other Courts
3  of Appeals, has concluded that a domestic relations order need only substantially comply with the
4  requirements of § 1056 in order to be held a QDRO. *See Tise*, 234 F.3d at 420; *see also Metro.*
5  *Life Ins. Co. v. Marsh*, 119 F.3d 415 (6th Cir. 1997); *Wheaton*, 42 F.3d at 1085. This standard has
6  evolved out of an understanding that Congress's intention in enacting the QDRO provisions was
7  to "mitigate the impact of divorce upon children and former spouses" by requiring that preexisting
8  obligations under domestic relations orders be upheld. *Tise*, 234 F.3d at 425. The specificity
9  requirements serve a practical purpose: Congress was "concerned with reducing the expense to
10 plan providers and protecting them from suits for making improper payments." *In re Gendreau*,
11 122 F.3d 815, 817 (9th Cir. 1997); *see Carmona v. Carmona*, 603 F.3d 1041, 1054 (9th Cir.
12 2010); *Wheaton*, 42 F.3d at 1084; *Carland v. Metro. Life Ins. Co.*, 935 F.2d 1114, 1120 (10th Cir.
13 1991). As such, while specificity is required, "[t]he pivotal question is whether the [order] 'clearly
14 contains the information specified in the statute that a plan administrator would need to make an
15 informed decision.'" *Hamilton v. Wash. St. Plumbing & Pipefitting Indus. Pension Plan*, 433 F.3d
16 1091, 1097 (9th Cir. 2006) (quoting *Stewart*, 207 F.3d at 1154).

17       Without deciding the question here, the LSA would likely pass muster as a QDRO. While
18 the Ninth Circuit has not addressed this particular question, both the Seventh and Tenth Circuits
19 have found the fourth QDRO criterion satisfied where a party had been ordered only to "carry life
20 insurance" or where the plan was simply referred to as "the life insurance which is presently
21 carried through [the party's] employer," even though the plan was not mentioned by name.
22 *Festini-Steele v. ExxonMobil Corp.*, 846 Fed. App'x 680, 686 (10th Cir. 2021); *Wheaton*, 42 F.3d
23 at 1084. Likewise here, the LSA required Marc Kowalski to "carry and maintain a life insurance
24 policy of $800,000" for the benefit of E.K. Since there appear to be no other life insurance policies
25 to which this could possibly refer, a plan administrator would likely have no trouble determining
26 (1) what plan the LSA speaks to (the Hartford Plan), (2) to whom the funds should be distributed
27 (E.K., by way of Kowalski), or (3) in what amount (the value of the policy, at least up to

ORDER ON MOTION TO DISMISS CROSS-CLAIMS AND MOTION TO STRIKE
CASE NO. 21-cv-06469-RS
6

$800,000). *See Sun Life Assurance Co. of Canada v. Jackson*, 877 F.3d 698, 704 (6th Cir. 2017); *Wheaton*, 42 F.3d at 1084. Including the name of the Hartford Plan would, "at least in the present case, [provide] a purely theoretical gain in certainty." *Wheaton*, 42 F.3d at 1085.

It is worth noting that accepting Valois' argument would effectively sanction a loophole in the QDRO framework. It would have been impossible for the Kowalskis to name the Hartford Plan in the LSA, since Marc Kowalski began his job at Micron in 2020 — a decade after the LSA was entered. *See* Kowalski Cross-Claim ¶ 73. Yet divorcées (or, probably more accurately, divorce attorneys) often draft agreements that contemplate such future obligations, and courts routinely enforce them. *E.g.*, *Festini-Steele*, 846 Fed. App'x at 686; *Equitable Life Assurance Soc'y v. Flaherty*, 568 F.Supp. 610, 611 (S.D. Ala.1983) (divorce decree required husband to "maintain a life insurance policy in the amount of $10,000.00 on himself making the parties minor child the irrevocable beneficiary of the same"); *cf. Tintocalis v. Tintocalis*, 25 Cal. Rptr. 2d 655, 657–58 (Ct. App. 1993) (husband ordered by court to "'immediately secure' and 'maintain' a $100,000 life insurance policy"). While there is a dearth of case law on the effect of such provisions on QDRO determinations,[3] allowing a party to avoid his or her obligations under a domestic relations order by simply switching life insurance plans, or denying a child's ability to rely on such an order just because his or her parent changed jobs, is directly contrary to Congress's concern for enforcing such preexisting obligations and protecting children and former spouses.

The motion to dismiss Kowalski's cross-claim is therefore denied, as it appears likely that the LSA is a QDRO, and Kowalski has thus stated a claim upon which relief can be granted.[4]

///

---

[3] *Cf. Barrs v. Lockheed Martin Corp.*, 287 F.3d 202, 209 n.7 (1st Cir. 2002) ("We intimate no view as to whether an assignment covering unspecified future policies would meet the statutory requirements for a QDRO, and if not, whether it would be enforceable." (citation omitted)). This issue appears to be a question of first impression within the Ninth Circuit.

[4] Valois further argues that the deficiencies she identifies in the LSA cannot be remedied if Kowalski were to seek an order *nunc pro tunc* from California Superior Court. *See* Dkt. 26-1, at 8–11. This need not be addressed in light of the denial of the motion to dismiss.

**B. Undue Influence and Motion to Strike**

Kowalski argues "[s]eparately and in the alternative" that Valois' claim to the proceeds is invalid because Valois exerted undue influence over Marc Kowalski. In support of this, Haili Kowalski avers that Valois submitted fraudulent documents to the state court in Idaho in the process of probating Marc Kowalski's will,[5] and that Valois improperly gained access to Marc Kowalski's bank accounts and "emptied them out." Kowalski Cross-Claim ¶ 66; *see id.* ¶¶ 52–70. "Given [this] history of allegedly illegal and unlawful behavior, all directed at improperly acquiring proceeds from the estate of decedent Marc Kowalski," Haili Kowalski believes Valois unduly influenced Marc Kowalski into designating her as the policy's beneficiary. *Id.* ¶ 71. Valois denies these allegations and argues that the cross-claim fails to plead facts sufficient to show that any undue influence occurred.

The parties disagree as to the exact elements of undue influence in the immediate case. Kowalski does not cite any particular standard for evaluating this claim, but she argues the inquiry is "a highly-fact intensive one" that would be more appropriate for review on a motion for summary judgment, rather than a motion to dismiss. Dkt. 30, at 14 (quoting *Tinsley v. Gen. Motor Corp.*, 227 F.3d 700, 705 (6th Cir. 2000)). Valois, meanwhile, argues that an undue influence claim regarding a policy governed by ERISA is determined by federal common law, and she cites several different standards applied by federal courts. *See* Dkt. 26-1, at 12–13 (also citing *Tinsley*, 227 F.3d 700). At a minimum, Valois argues, Kowalski "must allege both that Marc Kowalski was susceptible to undue influence and that Valois exerted it." *Id.* at 13.

Ninth Circuit courts have held that, under ERISA, federal common law governs the interpretation of state insurance policies. *See McClure v. Life Ins. Co. of N. Am.*, 84 F.3d 1129, 1133 (9th Cir. 1996); *see also Schreffler v. Metro. Life Ins. Co.*, No. CV 04-1561-PCT-SMM, 2006 WL 1127096, at *5 (D. Ariz. Apr. 25, 2006). Valois thus appears correct that the elements of

---

[5] In fact, Kowalski alleges, one of these fraudulent documents was the will itself, which Kowalski suggests was forged. *See* Kowalski Cross-Claim ¶¶ 59–61.

1  undue influence are determined by federal common law. Even without nailing down the specific

2  standard, Kowalski's cross-claim does not state a plausible claim for relief. Kowalski relies almost

3  entirely on speculative, circumstantial evidence in support of her theory. Even to the extent this is

4  permissible (or even expected) in an undue influence claim, *see Tinsley*, 227 F.3d at 705,

5  Kowalski fails to identify the manner in which Valois allegedly exerted undue influence in

6  connection with Marc Kowalski designating her as the beneficiary. Kowalski further alleges that

7  Marc Kowalski was generally susceptible to undue influence as a result of his alcohol use

8  disorder, but this averment fails to show that he was susceptible *when* he made the beneficiary

9  designation. *See, e.g.*, *Metro. Life Ins. Co. v. Galicia*, 19-cv-01412-JWH, 2021 WL 5083439, at *4

10 (C.D. Cal. Nov. 1, 2021). Taken together, these averments fail to state a plausible claim.[6]

The motion is therefore granted as to Kowalski's undue influence cross-claim, with leave to amend. Since Valois' motion to strike turns primarily on the contention that the undue influence claim is improperly pleaded, the motion to strike is denied, without prejudice, pending Kowalski's ability to remedy these deficiencies.

### C. Cross-Claim for Conversion

Finally, Valois argues (briefly) that ERISA preempts Kowalski's cross-claim for conversion to the extent the cross-claim involves the contested life insurance funds. To the extent it involves something else, such as Marc Kowalski's bank accounts, then it should be dismissed because Kowalski lacks standing to bring the claim and/or because the cross-claim does not arise out of the same transaction or occurrence. Kowalski disputes each of these points.

Kowalski's one-sentence averment provides little assistance in evaluating the legal basis for her conversion cross-claim. *See* Kowalski Cross-Claim ¶ 82. As the motion suggests, it is unclear what, exactly, Kowalski is alleging that Valois has converted. This ambiguity alone

---

[6] In addition, both parties appear to presume that an undue influence claim is cognizable under ERISA, but it is unclear that this is the case. *See Galicia*, 2021 WL 5083439, at *3 ("Courts are divided on the issue of whether ERISA preempts common law claims, such as fraud or undue influence, to invalidate beneficiary designations.").

indicates a failure to state a claim. Furthermore, the Supreme Court has recognized that ERISA's preemption provisions are "deliberately expansive" and capture all state law claims that "relate to" an employee benefit plan. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 46–47 (1987). Kowalski does not adequately justify why this general prohibition should not apply here. In light of these deficiencies, the motion to dismiss is granted with respect to Kowalski's cross-claim for conversion, with leave to amend.

## V. CONCLUSION

The motion to dismiss is granted with respect to Kowalski's cross-claim for conversion and her cross-claim for undue influence; leave to amend is granted for both. The motion to dismiss is otherwise denied. The motion to strike is denied, without prejudice. Any amended pleading must be filed within 21 days of the date of this order.

**IT IS SO ORDERED**.

Dated: February 3, 2023

_____
RICHARD SEEBORG
Chief United States District Judge