UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>HAILI KOWALSKI, et al.,<br><br>Defendants. | Case No. 21-cv-06469-RS<br><br>**ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT** |

# I. INTRODUCTION

This interpleader action turns on one central question: which of the parties is entitled to the proceeds of a $493,000 life insurance policy? Haili Kowalski and Marilyn Valois, both Co-Defendants and Cross-Claimants, have brought cross-motions for summary judgment to resolve this question. Valois argues she is entitled to the policy proceeds because she is the named beneficiary. Meanwhile, Kowalski contends her minor son, E.K., has a superior right to the funds under the terms of a Qualified Domestic Relations Order ("QDRO"), as defined by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* This order concludes Kowalski's position is correct, and as such, her motion is granted, and Valois' is denied.

# II. BACKGROUND

The factual background of this action was previously summarized, but it is restated here for reference. "Marc Kowalski died on December 30, 2020. Prior to his death, Mr. Kowalski participated in a group life insurance policy sponsored by his employer, Micron Technology,

Inc.," and administered by Hartford Life and Accident Insurance Company ("the Hartford Plan"). Dkt. 57 ("MTD Order"), at 1–2. "At the time of his death, the proceeds of the policy amounted to $493,000. The policy listed Marilyne Valois as the named beneficiary, and on this basis she submitted a claim to Hartford for the proceeds. Haili Kowalski, who was formerly married to Marc Kowalski, submitted a separate claim on behalf of their minor son, E.K." *Id.* at 2. Haili Kowalski asserted that E.K. was entitled to the funds pursuant to the terms of a 2010 Legal Separation Agreement ("LSA"), entered by the Santa Clara County Superior Court, that formalized the Kowalskis' divorce. Of relevance here, one provision of the LSA required Mr. Kowalski to "carry and maintain a life insurance policy of $800,000 and to name [E.K.] as the sole beneficiary and to not borrow, assign, or otherwise encumber said policy." *Id.*

"In the face of these competing claims, Hartford filed the instant Complaint in Interpleader in August 2021. Both Defendants filed answers with cross-claims. Kowalski's cross-claim seeks a declaratory judgment that she, as legal guardian of E.K., is entitled to the proceeds" because the LSA is a QDRO under ERISA.[1] *Id.* She also seeks an order compelling payment of those funds. In the alternative, she argues Valois is not entitled to any of the benefits because she "exerted undue influence and control over Marc Kowalski such that she was improperly listed as the beneficiary." Dkt. 63 ¶ 92. Valois similarly seeks a declaratory judgment that she is entitled to the proceeds as the policy's designated beneficiary, and that Kowalski's LSA is not a QDRO.

Valois moved to dismiss Kowalski's cross-claims, and that motion was granted in part and denied in part. Kowalski's undue influence cross-claim was dismissed, along with her cross-claim for conversion, both with leave to amend. Without calling the question, the order also concluded that "the LSA would likely pass muster as a QDRO." MTD Order at 6. As such, the motion was denied as to Kowalski's cross-claim for declaratory relief. Kowalski then filed an amended answer with cross-claims, and these cross-motions for summary judgment on the QDRO issue followed.

---

[1] As the Ninth Circuit has observed, this particular field of law, "unfortunately, requires some tolerance for acronyms." *Trs. of Dirs. Guild of Am.-Prod. Pension Benefits Plans v. Tise*, 234 F.3d 415, 419 (9th Cir. 2000), *opinion amended on denial of reh'g*, 255 F.3d 661.

### III. LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In reviewing cross-motions for summary judgment, each motion must be considered on its own merits." *Acosta v. City Nat'l Corp.*, 992 F.3d 880, 885 (9th Cir. 2019) (citation omitted). Pure questions of law are appropriate for resolution on a motion for summary judgment. *See Blue Lake Rancheria v. United States*, 653 F.3d 1112, 1115 (9th Cir. 2011).

### IV. DISCUSSION

The parties agree that the relevant question presented by the cross-motions is simply whether the LSA is a QDRO. If it is, Kowalski (as E.K.'s guardian) is entitled to the proceeds of the Hartford Plan; if it is not, then the funds belong to Valois. The parties similarly agree this is a question of law, not fact, making it suitable for resolution here. While the prior order examined this question in some detail (and, as noted above, came to a tentative conclusion on it), this order considers the question anew, drawing on the prior order as appropriate. *See Peralta v. Dillard*, 744 F.3d 1076, 1088 (9th Cir. 2014) (en banc).

**A. Statutory Background**

Put as succinctly as possible, Congress enacted ERISA "to protect participants in private employee benefit plans." *In re Gendreau*, 122 F.3d 815, 817 (9th Cir. 1997). In pursuit of this goal, ERISA prohibits the assignment or alienation of these benefits. 29 U.S.C. § 1056(d)(1). Separately, ERISA also broadly preempts state law affecting employee benefit plans. 29 U.S.C. § 1144(a). The interaction of these two concepts — ERISA preemption and its anti-assignment provisions — for some time presented a challenging question: did ERISA preempt domestic relations orders that purported to reassign benefits? *Stewart v. Thorpe Holding Co. Profit Sharing Plan*, 207 F.3d 1143, 1149 (9th Cir. 2000). Many courts found it did not, but Congress "resolved any uncertainty," *id.*, by passing the Retirement Equity Act of 1984 ("REA"), 26 U.S.C. § 417. "The REA amended ERISA by creating an exception to its anti-assignment provisions for state 'domestic relations orders' (commonly known as marriage dissolution orders) that meet the

requirements of a 'qualified domestic relations order' or QDRO." *Stewart*, 207 F.3d at 1149. Thus, "a QDRO has the effect of 'elevat[ing] a plan participant's legal obligations, commonly to a former spouse or children of a previous marriage, over the participant's express wishes to provide for other individuals as designated beneficiaries.'" MTD Order at 4 (alteration in original) (quoting *Trs. of Dirs. Guild of Am.-Prod. Pension Benefits Plans v. Tise*, 234 F.3d 415, 425 (9th Cir. 2000)). To qualify as a QDRO under 29 U.S.C. § 1056(d), an order must clearly specify:

> (i) the name and the last known mailing address (if any) of the participant and the name and mailing address of each alternate payee covered by the order,
>
> (ii) the amount or percentage of the participant's benefits to be paid by the plan to each such alternate payee, or the manner in which such amount or percentage is to be determined,
>
> (iii) the number of payments or period to which such order applies, and
>
> (iv) each plan to which such order applies.

29 U.S.C. § 1056(d)(3)(C). In addition, a QDRO must not "require the plan to provide increased benefits (determined on the basis of actuarial value)." *Id.* § 1056(d)(3)(D)(ii).[2]

While the statute itself is quite clear as to what is required for a domestic relations order to be a QDRO, the Ninth Circuit (along with several other circuits) has held that an order will qualify as a QDRO so long as it "substantially complies" with the enumerated requirements. In a pair of cases from 2000 — *Stewart* and *Tise* — the Court observed that Congress enacted the QDRO provisions specifically "to protect the financial security of ex-spouses" and dependent children following a divorce or separation. *Stewart*, 207 F.3d at 1149; *accord Tise*, 234 F.3d at 420. It thus rejected reading these requirements in an "unduly narrow" fashion, given that doing so "has the

---

[2] It should be noted that, under ERISA, "[w]hether a state court's order meets the statutory requirements to be a QDRO . . . is a matter determined in the first instance by the pension plan administrator, and, if necessary, by a court of competent jurisdiction." *Tise*, 234 F.3d at 421 (citing 29 U.S.C. § 1056(d)(3)(H)(i)). This does not appear to have occurred here, as Hartford simply filed the instant Complaint in Interpleader without expressing a view on the QDRO issue. Because neither party suggests that remand to Hartford is necessary (and given that the losing party would likely seek redress in this Court anyway), the motions will still be decided here.

1    potential to frustrate" Congress's intent "by making it unreasonably difficult for domestic relations

2    orders to qualify as QDROs." *Stewart*, 207 F.3d at 1155 (quoting *Hawkins v. Comm'r*, 86 F.3d

3    982, 991 (10th Cir. 1996)). At the same time, these provisions were designed to "spar[e] plan

4    administrators the grief they experience when because of uncertainty concerning the identity of the

5    beneficiary they pay the wrong person, or arguably the wrong person, and are sued by a rival

6    claimant." *Stewart*, 207 F.3d at 1150 (emphasis omitted). Relying on the Seventh Circuit's opinion

7    in *Metropolitan Life Insurance Co. v. Wheaton*, 42 F.3d 1080 (7th Cir. 1994), and the Sixth

8    Circuit's opinion in *Metropolitan Life Insurance Co. v. Marsh*, 119 F.3d 415 (6th Cir. 1997), the

9    *Stewart* and *Tise* Courts thus concluded that substantial compliance with these requirements was

10   appropriate. The Ninth Circuit reiterated these principles a few years later in *Hamilton v. Wash.*

11   *State Plumbing & Pipefitting Indus. Pension Plan*, 433 F.3d 1091 (9th Cir. 2006). In the

12   meantime, district courts have played their traditional role of applying this standard in myriad

13   circumstances. *See, e.g.*, *Hartford Life & Accident Ins. Co. v. Premium Escrow Servs., Inc.*, Civ.

14   No. 04-1768-PA, 2005 WL 6217077 (D. Or. Aug. 3, 2005); *Ret. Plan for Emps. of Hawaiian Elec.*

15   *Indus., Inc. & Participating Subsidiaries v. Kailiponi*, No. CV 07-00206 HG BMK, 2007 WL

16   9711168 (D. Haw. Dec. 4, 2007); *Sun Life Assurance Co. of Canada v. Kimble*, No. CIV S-06-

17   2041 EFB, 2007 WL 3313448 (E.D. Cal. Nov. 6, 2007); *Vyas v. Vyas*, No. CV 15-02152 RSWL

18   (DFMx), 2017 WL 3841809 (C.D. Cal. Sept. 1, 2017).

19   **B. Analysis**

20         Valois first argues that the LSA is not a QDRO because it does not "clearly specify" the

21   plan to which it applies, that is, the Hartford Plan. Not only that, the LSA does not specify any

22   plan at all "and provides no basis to do so." Dkt. 79, at 20. Kowalski contends "it is undisputed

23   that there are no other plans at play in this case," and therefore "the LSA can only apply to the

24   Hartford Plan, making the LSA 'specific enough to serve ERISA's purposes." Dkt. 84, at 3

25   (quoting *Stewart*, 207 F.3d at 1154 n.8 (discussing *Wheaton*)); *accord* Dkt. 80, at 14–15. The

26   parties effectively agree that the LSA need not include the name of the Hartford Plan, and, indeed,

27   case law supports this. *See Wheaton*, 42 F.3d at 1084 ("[T]he stipulation does specify 'the life

insurance which is presently carried through his/her employer,' and this designation permits the identification of the plans to which the decree applies without significant ambiguity. Any life insurance provided under an employer's policy at the time of the stipulation is covered."); *Sun Life Assurance Co. of Canada v. Jackson*, 877 F.3d 698, 700 (6th Cir. 2017) (divorce agreement required husband to "maintain, unencumbered, all employer-provided life insurance, now in existence at a reasonable cost, or later acquired at a reasonable cost, naming [couple's] minor child as primary beneficiary during her minority"); *cf. Hartford Life*, 2005 WL 6217077, at *7 (divorce order met QDRO requirements and identified plan as "$250,000 face value life insurance policy written in connection with his employment at Costco"). Thus, the LSA's failure to name the Hartford Plan is not an obstacle to concluding it is a QDRO.

The more troublesome feature of the LSA is that, as Valois notes, there is no information on the face of the document from which one could draw an immediate connection to the Hartford Plan. Other district courts reviewing divorce orders with similarly "open-ended, indefinite" language have concluded they cannot qualify as QDROs. *Unicare Life & Health Ins. Co. v. Phanor*, 472 F. Supp. 2d 8, 13 (D. Mass. 2007); *see Sun Life Assurance Co. of Canada v. Sullivan*, 206 F. Supp. 2d 191, 197 (D. Mass. 2002) (no QDRO where divorce agreement called for husband "to maintain $150,000.00 of 'his group life insurance'" for benefit of ex-wife); *Deaton v. Cross*, 184 F. Supp. 2d 441, 442–43 (D. Md. 2002) (divorce agreement that required husband to "name the children of the parties as the irrevocable beneficiaries of any policy of [life] insurance available to him through his employer" was "obvious[ly]" not a QDRO). Indeed, the Middle District of Georgia recently concluded that a divorce order with language virtually identical to that of the LSA was "not specific enough" to meet the fourth QDRO requirement. *Jackson ex rel. H.D.P. v. Pressley*, No. 22-CV-00311-TES, 2023 WL 2695099, at *3 (M.D. Ga. Mar. 29, 2023); *see also USAble Life v. Brown*, No. 208-CV-442-WKW WO, 2009 WL 798950, at *3 (M.D. Ala. Mar. 24, 2009) (same).[3]

---

[3] Kowalski does not meaningfully address or distinguish these cases.

On the other hand, some courts have taken a more functional approach. In *Festini-Steele v. ExxonMobil Corp.*, a husband and wife undergoing a divorce filled out a standard, state-issued form that provided "a series of check-box options regarding life insurance and instruct[ed] the parties to 'check all that apply.'" 846 Fed. App'x 680, 682 (10th Cir. 2021) (alteration omitted). The husband and wife checked the first box, which corresponded to the statement: "The parties agree to the following terms relating to all life insurance accounts." *Id.* (emphasis omitted). They also checked an "Other" box and wrote in the following: "[Husband] will carry life insurance on [Wife] as beneficiary until daughter A.S. is 18 years of age." The district court concluded this form failed clearly to identify the plan involved, but the Tenth Circuit reversed. It reasoned that, by checking the first box, the parties had "clearly specified that [Husband] was required to name [Wife] as the beneficiary of all life insurance plans or policies insuring his life until their daughter A.S. turned eighteen." *Id.* at 686. Because the form clearly applied to "all" such policies, and because "'all' means just that — all," the form "eliminate[d] the need for the plan administrator to conduct an *ad hoc* subjective inquiry into the parties' true intentions." *Id.* at 688 (internal quotation marks omitted) (quoting in part *Hawkins*, 86 F.3d at 992) (citing *Jackson*, 877 F.3d at 704). It was, therefore, a QDRO.

As may be evident by this point, there is precedent to support both parties' contentions. However, in view of all the relevant authority, and keeping in mind the congressional purposes underpinning the QDRO provisions, Kowalski's position is more persuasive — at least on the facts of this case. There really is no question as to what life insurance policy is implicated by the LSA. Marc Kowalski was required to maintain "*a* life insurance policy" (that is, one life insurance policy) for E.K.'s benefit. A plan administrator could conclude that the Hartford Plan, the only policy out there with Marc Kowalski's name on it, must be the policy in question. This is not a case in which, for instance, a party is attempting to parlay a divorce order's general obligation to provide child support into an entitlement to the proceeds of a life insurance policy. *See Kimble*, 2007 WL 3313448, at *5. Rather, the mandate of the LSA was clear, and Marc Kowalski was not entitled to designate any other than E.K. as the beneficiary on his life insurance policy.

This conclusion is buttressed by the fact that the Kowalskis apparently drafted the LSA without the assistance of counsel. To the extent ERISA already presents "a drafting morass for the lawyer," *Hamilton*, 433 F.3d at 1096, it's fair to say this is doubly (if not triply or quadruply) so for laypeople; and if it already "is asking too much of domestic relations lawyers and judges to expect them to dot every *i* and cross every *t* in formulating divorce decrees that have ERISA implications," *Wheaton*, 42 F.3d at 1085, it would be unfair to expect that level of diligence here. Requiring Haili Kowalski to have, for instance, returned to state court each time Marc switched jobs or life insurance policies is simply unrealistic — especially if she (quite reasonably) could have concluded the language they agreed on in the LSA was already sufficient.

It should be noted that this conclusion arises from the specific facts of this case and the fortuity, for Kowalski, that only one life insurance policy is implicated. It is very easy to imagine different factual scenarios in which the language of the LSA would not clearly support a particular distribution. Suppose, for instance, that Marc Kowalski had taken out another life insurance policy for $500,000, also naming Marilyn Valois as the beneficiary. The LSA refers only to "a life insurance policy of $800,000," so which of the two plans would Kowalski be entitled to? Or, since each of these two plans would be under $800,000, could Kowalski argue E.K. was entitled to $800,000 across both plans? These and other questions would readily abound — and that's only with two plans in play. *E.g.*, *Vyas*, 2017 WL 3841809, at *3 (six retirement plans at issue).

On these facts, however, the language is clear when read in the appropriate context, and the fourth QDRO requirement is thus satisfied. Valois' additional argument that the LSA need not provide increased benefits is a non-starter. The LSA in no way requires Hartford to "affirmatively afford a type or form of benefit not established under [the] plan." *DeFazio v. Hollister, Inc.*, 636 F. Supp. 2d 1045, 1078 (E.D. Cal. 2009). To the extent this QDRO provision is designed to shield plan providers from being forced to shoulder higher burdens, this simply is not a problem here. As the prior order noted, "Hartford evidently does not view itself at risk of paying any increased amount, having already interpleaded the disputed funds." MTD Order, at 5; *cf. Wheaton*, 42 F.3d at 1084–85. Thus, the LSA also does not fail as a QDRO under the bar on increased benefits.

# V. CONCLUSION

Taking Valois' position would require elevating form over substance and minimizing Congress's intent of providing security for former spouses and dependent children — both counter to the Ninth Circuit's instructions. The 2010 LSA is thus a QDRO as a matter of law. Kowalski's motion for summary judgment is granted, and Valois' motion for summary judgment is denied.

**IT IS SO ORDERED**.

Dated: August 22, 2023

RICHARD SEEBORG
Chief United States District Judge